FILED

14 JAN 16 PM 2:54

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: DG

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK L. MATCHYNSKI, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>OCWEN LOAN SERVICING; MATT YSBRAND; JENNIFER BOLTON; GMAC MORTGAGE; MORTGAGE ELECTRONIC REGISTRATION SYSTEM INC. (MERS); FANNIE MAE; ADVANTAGE TITLE, INC.; and PACIFIC CITY BANK,<br><br>Defendants. | CASE NO. 13-CV-1915-BEN (WMC)<br><br>**ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**<br><br>[Docket Nos. 9, 11, 13] |

On August 19, 2013, Plaintiff Mark L. Matchynski commenced this action by filing a Complaint against the above-named defendants. Before this Court are three Motions to Dismiss filed by Defendant Advantage Title, Inc. (Docket No. 9), Defendants Jennifer Bolton, Fannie Mae[1], Mortgage Electronic Registration System, Inc. (MERS), Ocwen Loan Servicing, and Matt Ysbrand (Docket No. 11), and by Defendant Pacific City Bank (Docket No. 13). For the reasons stated below, the Motions to Dismiss are **GRANTED** and this Complaint is **DISMISSED** in its entirety.

---

[1] Plaintiff claims in his Opposition that Fannie Mae lacks legal standing to file a motion to dismiss because it has been dissolved. (Docket No. 18, at 4). Plaintiff cannot claim to be able to obtain relief from an entity, then argue that the entity is dissolved and cannot file briefing to defend itself.

# BACKGROUND

According to his Complaint, Plaintiff owns property in San Diego, California ("Subject Property"). He alleges that he tendered a promissory note to a corporate bank in exchange for a "bank check note." (Compl. ¶ 15). He states that he transferred all "ownership, equity, and rights" in the property to the "MM Balboa Arms Trust" on March 12, 2013, with Plaintiff as trustee. (*Id.* ¶¶ 19-20).

Plaintiff states that on July 20, 2012, he sent an electronic funds transfer (EFT) instrument in the amount of $162,771.74 and the mortgage payoff statement to Defendant GMAC Mortgage LLC (GMAC).[2] (*Id.* ¶ 21, 23). On August 13, 2012, Plaintiff was notified by GMAC employee Defendant Jennifer Bolton that the instrument was refused as an "Unacceptable Form of Payment." (*Id.* ¶ 22). On August 20, 2012, Plaintiff informed Bolton that the instrument was lawful and proper, "so as to set-off and discharge the debt associated with this specific account." (*Id.* ¶ 23). He states that the original instrument was not returned within the time and in the manner required, and therefore it has been accepted (*Id.*) On September 9, 2012, Plaintiff sent a letter to GMAC stating that their responses were irrelevant and invalid, and asking for a copy of the agreement between Plaintiff and GMAC. (*Id.* ¶ 26). On September 17, 2012, Plaintiff received a letter from Defendant Matt Ysbrand of GMAC, which stated that an EFT is not an acceptable form of payment, and that payment in the form of certified funds, such as a cashier's check or bank wire, is the only form of tender accepted for a full payoff of the debt. (*Id.* ¶ 27). GMAC informed Plaintiff around January 2013 that the servicing rights had been transferred to Defendant Ocwen Loan Servicing (Ocwen). (*Id.* ¶ 28). Plaintiff asked Ocwen to allow him to inspect the original promissory note to verify it was properly endorsed. (*Id.* ¶ 29). In its response, Ocwen allegedly claimed to have enclosed the original note, and sent Plaintiff a copy

---

[2] On September 13, 2013, a Notice of Bankruptcy was filed with this Court stating that GMAC Mortgage LLC has filed for bankruptcy. (Docket No. 10).

1  of the original note. (*Id.* ¶ 30). Plaintiff asserts that he believes the note was not
2  produced because it was collateralized. (*Id.* ¶ 31). He further states that this failure to
3  produce the note violated the Uniform Commercial Code. (*Id.*)

4       Plaintiff also states that a national bank has the power to lend money, but not its
5  credit, and that there is no evidence here to support the fact that the banks lent money,
6  and not credit. (*Id.* ¶ 33).

7       Plaintiff also claims that legal tender for the discharge of a debt is not required,
8  that payment cannot be demanded in a particular form of coin or currency or legal
9  tender, and that repayment or payment need only be made in equivalent kind: a
10 negotiable instrument. (*Id.* ¶ 36). He states that GMAC demanded a specific form of
11 payment, in violation of federal law and the Uniform Commercial Code. (*Id.* ¶ 37).

12      Plaintiff states that Ocwen intended to deceive him by sending a copy of the
13 original note. (*Id.* ¶ 39). He then cites to a number of federal laws and regulations
14 regarding copying securities and counterfeiting. (*Id.*)

15      Plaintiff seeks to quiet title to the Subject Property and asserts a fraud claim.
16 Plaintiff has conceded that his third and fourth causes of action, which seek preliminary
17 and permanent injunctive relief, are not independent causes of action. (Docket No. 16,
18 at 2). He now appears to be asking this Court to grant this form of relief.

## LEGAL STANDARD

20      Under Federal Rule of Civil Procedure 12(b)(6), a district court may grant a
21 motion to dismiss if, taking all factual allegations as true, the complaint fails to state
22 a plausible claim for relief on its face. FED. R. CIV. P. 12(b)(6); *Bell Atl. Corp. v.
23 Twombly*, 550 U.S. 544, 556-57 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678
24 (2009) (requiring plaintiff to plead factual content that provides "more than a sheer
25 possibility that a defendant has acted unlawfully"). Under this standard, dismissal is
26 appropriate if the complaint fails to state enough facts to raise a reasonable expectation
27 that discovery will reveal evidence of the matter complained of, or if the complaint

lacks a cognizable legal theory under which relief may be granted. *Twombly*, 550 U.S. at 556.

## DISCUSSION

Plaintiff's causes of action refer generally to "Defendants," and it is often ambiguous from the Complaint and the context which defendants are accused of which causes of action. It is also often unclear why each defendant has been accused of a particular cause of action. Plaintiff acknowledges this difficulty, and asks this Court to read his Complaint in light of his allegations, and to allow him leave to amend if necessary. (Docket Nos. 16, 18, 20). Given such confusion, amendment would be required to proceed.

However, Plaintiff articulates several general theories that he claims entitle him to relief. Upon full review of the Complaint, and taking into consideration the fact that Plaintiff is proceeding without legal training or experience in crafting pleadings, this Court concludes that the arguments Plaintiff puts forth cannot support a claim for relief which this Court can grant.

### A. Plaintiff Fails to State a Quiet Title Claim

Plaintiff asks this Court to quiet title against anyone claiming interest in the Subject Property. (Compl. ¶ 42). He states that the MM Balboa Arms Trust is the legal owner of the Subject Property, and that none of the Defendants, or their successors or assignees, have any right to title or interest in the Subject Property, and have no right "to entertain any right of ownership including rights to possession." (*Id.* ¶¶ 41-42). He seeks a declaration that title is vested in the MM Balboa Arms Trust, that the Defendants "have no interest estate, right, title or interest in the Subject Property." (*Id.* ¶ 43). He asks that "Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title, or interest in the Subject Property." (*Id.*) Plaintiff fails to state a claim.

///

### 1. Plaintiff Fails to Properly Allege Tender

Plaintiff fails to state a quiet title claim because he does not properly allege tender. In an action for quiet title, a mortgagor is required to allege tender or the ability to tender the amounts borrowed. *E.g.*, *Horton v. Cal. Credit Corp. Retirement Plan*, 835 F. Supp. 2d 879, 893 (S.D. Cal. 2011) (citing *Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477-78 (1974) ("The cloud upon his title persists until the debt is paid") (citations omitted)).

Plaintiff makes no allegation that any actual transfer of money has taken place to discharge the debt. Plaintiff has not alleged that money would be transferred and his debt discharged if his instrument were accepted and the necessary steps were taken to redeem it. Indeed, Plaintiff does not explain what this instrument is, what account or fund the instrument could be used to draw upon, or whether GMAC could have immediately accessed legal tender. Plaintiff also fails to allege that he attempted to tender payment in another form after the first form of payment was rejected.

The Court also notes that Plaintiff nowhere alleges that he has the ability to tender the amount of money owed. California Civil Code § 1485 provides that "an obligation is extinguished by an offer of performance, made in conformity to the rules herein prescribed, and with intent to extinguish the obligation." CAL. CIV. CODE § 1485. In order for the offer to be valid, it must be made in good faith, unconditional, offer full performance, and the offeror must able to perform. *U.S. Bank Nat'l Ass'n v. Friedrichs*, 924 F. Supp. 2d 1179, 1186 (S.D. Cal. 2013) (citing CAL. CIV. CODE §§ 1486, 1493, 1494, 1495); *see also Still v. Plaza Marina Comm. Corp.*, 21 Cal. App. 3d 378, 385 (5th Dist. 1971). Plaintiff's offer of an "EFT instrument" would be insufficient unless he was able to perform the promise.

### 2. Plaintiff Fails to State a Basis to Infer that GMAC was Required to Accept Tender of an EFT Instrument

Plaintiff appears to claim that he discharged his debt because he submitted an

EFT instrument. He appears to claim that this is sufficient because GMAC was required to accept the instrument, and that it has accepted the instrument. Plaintiff does not provide a legal basis from which this Court can conclude that a quiet title action is proper where one method of tender is improperly rejected, although the Court does not find to the contrary.

Plaintiff fails to state a basis from which this Court could conclude that GMAC was required to accept the "EFT instrument." Although the Complaint is frequently unclear, Plaintiff appears to argue that GMAC was required to accept the EFT because he interprets the Uniform Commercial Code (UCC) and federal law to prevent GMAC from demanding tender in a particular form.

Plaintiff's claim that UCC Article 3 required GMAC to accept the EFT instrument is insufficient. Plaintiff cited to UCC § 3-103 and § 3-104. (Compl. ¶ 37). The Court has examined those provisions, as well as the similar provisions in California Commercial Code §§ 3103, 3104. Plaintiff does not explain how he believes these provisions would require GMAC to accept the EFT instrument. Plaintiff also alleges that GMAC accepted the EFT instrument pursuant to California Commercial Code § 3603. (Compl. ¶ 38). Plaintiff fails to explain how this section required GMAC to accept the instrument, or how the failure to return the original note constituted acceptance. Furthermore, the UCC provisions on tender and discharge are premised on the existence of a valid commercial instrument by which a claimant has obtained or can obtain actual payment. *Mould v. Saxon Mortg. Servs., Inc.*, No. C05-292P, 2005 WL 1950268, at *2 (W.D. Wash. Aug. 12, 2005). Plaintiff has not stated the nature of the instrument he submitted, or alleged that GMAC did or could obtain actual payment of the amount owed.

Other plaintiffs have raised similar claims, often referred to as the "bill of exchange" theory. Although Plaintiff does not provide details about the instrument he actually submitted, Plaintiff attached a "Notice of Memorandum of Law - Points and

Authorities in Support of International Bill of Exchange" to his Complaint. (Pl. Ex. D). Although frequently unclear, this document claims that instruments tendered to a bank and negotiated to the United States Treasury for settlement are obligations of the United States. (*Id.* at 1). It states that in 1933, gold and silver were replaced by United States debt, credit, and currency for which the property and assets of American citizens are collateral. (*Id.* at 3). According to the document, due process prevents private property and wealth of citizens from being pledged or risked for government purposes without providing them a remedy, and that the United States has provided such a remedy. (*Id.* at 4-5). The document points out that House Joint Resolution 192 and Public Law 73-10, which suspended the gold standard, abrogated the right to demand payment in gold and made Federal Reserve Notes legal tender, backed by the credit of the nation. (*Id.* at 5). The document concludes that there is no actual money in circulation which can repay a debt, and that Federal Reserve Notes can only discharge a debt. (*Id.*) It claims that this creates a debt-based system. (*Id.*) The document argues that a nationwide association of private, unincorporated individuals is a national banking association, and can issue notes against the obligation of the United States "on the same par and category" with other Federal Reserve Notes and other currency and legal tender obligation. (*Id.* at 10). Individuals can thus recover their risk. (*Id.* at 9).

The California courts have firmly rejected this theory and efforts to claim that a private individual's issuance of documents claiming the obligation of the United States to pay the face value constitutes tender. In *McElroy v. Chase Manhattan Mortg. Corp.*, 134 Cal. App. 4th 388 (4th Dist 2005), the plaintiffs submitted a bill stating that the Secretary of the Treasury was obliged to pay the value of the bill. *Id.* at 392. The bill stated that this was required as a result of HJR-192, Public Law 73-10, and the Supreme Court's decision in *Guaranty Trust Co. v. Henwood*, 307 U.S. 247 (1939). *McElroy*, 134 Cal. App. 4th at 392. The appeals court in *McElroy* agreed with a lower court that the bill was "worthless on its face." *Id.* It found that it was not a negotiable

1  instrument, and that it was not drawn on a bank. *Id.* It firmly stated that "[n]othing
2  contained in the Joint Resolution of Congress, or in the decision of the United States
3  Supreme Court in *Henwood* creates (or even suggests) any obligation on the part of the
4  Secretary of the Treasury to pay the Bill." *Id.*

5  District courts have reached similar conclusions where plaintiffs have "tendered"
6  offers of payment using different instruments, including purported electronic fund
7  transfers, and later argued that the UCC requires that this payment be accepted, and that
8  failure to return the original instrument constitutes acceptance. *E.g., Jacobsen v.*
9  *HSBC Bank USA, N.A.*, No. 12-cv-486, 2012 WL 6005756, at *3 (D. Nev. Nov. 30,
10  2012) (rejecting "bill of exchange" theory in dismissing quiet title claim based on
11  tender of payment using electronic funds transfer instrument not returned to the
12  plaintiff); *Potter v. BAC Home Loans Servicing, LP.*, 2011 WL 2971204, at *6 (D. Nev.
13  July 19, 2011) ("bill of exchange" theory rejected across the country); *Hennis v.*
14  *Trustmark Bank*, 10CV20, 2010 WL 1904860, at *5-6 (S.D. Miss. May 10, 2010)
15  (failure to state a claim where plaintiffs alleged sending "bills of exchange" requiring
16  United States to pay their debts and plaintiffs failed to establish the existence and
17  validity of the alleged bills of exchange).

18  Additionally, Plaintiff's discussion of the UCC indicates he may be confused
19  about the distinction between the Uniform Commercial Code and the United States
20  Code (U.S.C.). Plaintiff argues that it is incorrect to state that UCC law does not apply
21  to the note and deed of trust. His example is that his cover sheet for the civil case says
22  it was filed under "12 USC Section 24 Paragraph 7." (Docket No. 18-1, at 3). Plaintiff
23  claims that this requires that a bank lend money and not credit, and that this applies to
24  the note and deed of trust. (*Id.*) However, the U.S.C. is federal law, whereas the UCC
25  is a code that has been adopted by some jurisdictions. To the extent that the U.S.C.
26  applies, this does not mean that the UCC applies.

27  Plaintiff also cites to 31 U.S.C. § 5118, which regulates the use of "gold
28

clauses." Such clauses are provisions that give a party the right to require payment in the form of either a) gold, b) a particular United States coin or currency, or c) United States money measured in gold or a particular United States coin or currency. 31 U.S.C. § 5118(a). The Act provides that "An obligation issued containing a gold clause or governed by a gold clause is discharged on payment (dollar for dollar) in United States coin or currency that is legal tender at the time of payment." 31 U.S.C. § 5118(d)(2). Plaintiff states that an unnamed Court of Appeals in an unnamed decision interpreted the statute and the Supreme Court's decision in *Henwood* to mean that legal tender is not required to discharge a debt; that payment cannot be demanded in a particular form of coin, currency, or tender; and that repayment can be made with a negotiable instrument. (Compl. ¶ 36). Plaintiff appears to believe that this permits him to submit payment of his debt in any form. It is not apparent that the refusal of an EFT instrument, or a request that valid legal tender be transmitted by one of several methods, is a "gold clause" requiring payment in a particular coin or currency. However, even if the obligation were found to contain a "gold clause," 31 U.S.C. § 5118(d)(2) explicitly does not apply to an obligation which was issued after October 27, 1977. Plaintiff offered no evidence that the obligation was issued prior to that date. This statute does not permit Plaintiff to insist that his EFT instrument be accepted.

### 3. Plaintiff Cannot Require Any Defendant to Produce the Note

Plaintiff also appears to challenge the authority of Ocwen to service the mortgage based on the fact that Ocwen has not produced the original note. California courts have rejected efforts to force defendants to bear the burden of proving that a proper assignment has occurred. California's nonjudicial foreclosure statutes are a "comprehensive scheme" designed 1) to provide a quick, inexpensive and efficient remedy against defaulting parties, 2) to protect the debtor/trustor from wrongful loss, and 3) to ensure that a sale is final between the parties and conclusive as to a bona fide purchaser. *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 270 (1st Dist.

2011) (citing *Moeller v. Lien,* 25 Cal. App. 4th 822, 830 (2d Dist. 1994)). A nonjudicial foreclosure sale is presumed to have been conducted regularly, and the burden of proof rests with the party attempting to rebut this presumption. *Id.* (citations omitted). Accordingly, where a plaintiff contends that a sale is invalid because the party had no authority to conduct the sale, the burden is on the plaintiff to affirmatively plead facts showing an impropriety. *Id.* The burden has also been placed on plaintiffs when a foreclosure sale has not yet occurred. *See McCloskey v. Land Home Fin. Servs.*, No. 12-cv-2775, 2012 WL 3583347, at *2 (N.D. Cal. Aug. 20, 2012).

Plaintiff cannot bring an action to require the foreclosing party to demonstrate its authority to foreclose in court. *Silga v. Mortg. Elec. Registration Sys., Inc.*, 219 Cal. App. 4th 75, 84-85 (2d Dist. 2013) (citations omitted). Plaintiff must provide some specific factual basis for his claim that Ocwen, or any other defendant, lacks authority. *See id.* Similarly, Plaintiff cannot state a cause of action by implying that there is no proper chain of title, or that a note was not properly transferred or assigned, without providing some basis from which this Court could conclude that this is more than speculation. *See Iqbal*, 556 U.S. at 678; *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1155-56 (2011) (no judicial action to test whether person initiating foreclosure has authority to do so, where no specific factual basis was asserted for alleging that foreclosure was initiated by the wrong party). Plaintiff alleges no facts to suggest that GMAC or Ocwen did not have the right to demand payment, other than the fact that he has not yet seen the original note.

Plaintiff's related claims regarding the copy of the note likewise must fail. Plaintiff cited to a number of statutory provisions regarding counterfeiting and reproducing securities. (*See* Compl. ¶ 39). To the extent he argues that Ocwen violated such laws by pretending to have a security that is really a counterfeit security, this accusation rests on his unsupported allegation that they do not posses a properly transferred original note. As stated above, Plaintiff cannot do so. He has produced no

evidence and made no factual allegations from which this Court could conclude that Ocwen was presenting a copy of a security that it did not possess.

### 4. Plaintiff's Claim that the Bank Lent Credit and Not Money Must Fail

Plaintiff repeatedly states that a bank can lend money, but not credit, and that he has not seen any evidence that banks lent from money and not credit. (*E.g.*, Compl. ¶ 33). Plaintiff does not clearly explain the relevance of this claim to his lawsuit, but it appears that he is challenging the validity of the mortgage debt. At the outset, Plaintiff cannot simply bring a lawsuit and require a defendant to prove it lent money, he is required to state factual allegations from which this Court could infer that a defendant has violated some law. Plaintiff has not done so, as he alleges that he received a "bank check note" in exchange for his promissory note. (*Id.* ¶ 15). He does not allege that the bank guaranteed his debt without lending money. One of Plaintiff's attachments examines the lending process and the means by which banks create money to conclude that banks are lending credit when they make loans. (*See.* Pl. Ex. B).

The argument that restrictions requiring banks to lend money, and not credit, precludes a bank from making mortgage loans has been soundly rejected. *See Fed. Home Loan Mortg. Corp. v. Crittenden*, No. 11-cv-729, 2012 WL 6725636, at *4-5 (M.D. Alab. Oct. 26, 2012). Although earlier versions of the Federal Reserve Act were susceptible to this argument, the provision has been repealed and replaced. *Id.*; 12 U.S.C. § 24. The Supreme Court has reviewed this history, and determined that although Congress once imposed strict restrictions on the authority of banks to loan money on the security of real estate, Congress has amended the law to allow national banks greater authority to make mortgage loans. *See Mich. Nat'l Bank*, 365 U.S. at 497 n. 6. Furthermore, the current Federal Reserve Act expressly grants national banking associations authorization to make real estate loans secured by liens on interests in real estate. 12 U.S.C. § 371(a).

///

### 5. The Seventh Amendment

Plaintiff argues that non-judicial foreclosure violates the Seventh Amendment by depriving him of a jury trial. However, nonjudicial foreclosure is not a judicial proceeding to which the Seventh Amendment applies. Nonjudicial foreclosure is a purely private remedy, and its constitutionality has been upheld. *See Apao v. Bank of N.Y.*, 324 F.3d 1091, 1092 (9th Cir. 2003).

### B. Plaintiff Fails to State a Claim for Fraud

Plaintiff claims that Defendants engaged in a pattern of unlawful, fraudulent, or unfair predatory real estate practices. (Compl. ¶ 45). He claims that he is in jeopardy of "losing money as payments" after he had already discharged the debt. (*Id.*) He claims that Defendants illegally demanded a specific form of payment. (*Id.* ¶ 46). Plaintiff also states that Defendants have not proved that they lent money rather than credit, and that he does not believe such evidence exists. (*Id.* ¶ 48).

To state a claim for fraud in California, a plaintiff must allege: (1) A promise made regarding a material fact; (2) the absence of intent on the part of the defendant at the time the promise was made to perform it; (3) intent on the part of the defendant to induce action by plaintiff; (4) justifiable reliance on the promise by plaintiff; (5) nonperformance of the promise by the defendant, and (6) injury and damage proximately resulting to the plaintiff. *Bondi v. Jewels by Edwar, Ltd.*, 267 Cal. App. 2d 672, 677 (2d Dist. 1968)

Rule 9(b) of the Federal Rules of Civil Procedure requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) requires plaintiffs to specify "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citation omitted). The Ninth Circuit has stated that Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Walling v. Beverly Enters.*, 476

F.2d 393, 397 (9th Cir. 1973).

Plaintiff's Complaint falls far short of the pleading standard. It is not clear from the Complaint what exactly he is alleging was a misrepresentation, much less the circumstances of the misrepresentation. To the extent Plaintiff's fraud claims are based upon the theories discussed above, Plaintiff has not presented a plausible allegation that any of the Defendants made any false statements about permissible forms of payment or any other real estate practice. To the extent Plaintiff is claiming that it was a misrepresentation to inform him that he could not submit payment in the form of an EFT transfer, he has failed to allege, among other things, that he justifiably relied on this misrepresentation in some fashion.

As Plaintiff fails to make the necessary allegations for a fraud claim with sufficient particularity, his cause of action must be dismissed.

### C. Plaintiff Fails to State a Claim for Injunctive Relief

As stated above, this Court will treat the "causes of action" for temporary and permanent injunctions as requests for specific forms of relief. Plaintiff seeks a temporary injunction to enjoin and restrain Defendants or others, including sheriffs, justices of peace, and attorneys, from taking any actions against Plaintiff connected with the subject matter of the suit. (Compl. ¶ 50). He also seeks a permanent injunction against the same parties, enjoining and restraining them from attempting to harass, foreclose, or take any other action against Plaintiff with regard to the subject matter of this suit. (*Id.* ¶ 52).

As Plaintiff's causes of action have been dismissed, the relief that he seeks cannot be granted. To the extent that Plaintiff sought a preliminary injunction, he has failed to demonstrate that he is likely to succeed on the merits of his claim, even if he amends the Complaint. *See Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

///

D. Other Claims

Plaintiff's complaint is lengthy, and occasionally makes references to other federal laws without clearly specifying their relevancy or alleging any violations as a cause of action. To the extent Plaintiff sought to assert any other violations, his claims are clearly insufficient to state a claim under the Rule 8 pleading standard.

## CONCLUSION

For the reasons stated above, Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE** in its entirety. Plaintiff is given **thirty days** from the date this Order is filed to file an Amended Complaint.

Any new complaint filed by the Plaintiff must clearly allege which parties violated which causes of action, and provide sufficient factual allegations from which this Court could conclude that the particular party can be held liable. Plaintiff is reminded that he must provide sufficient allegations for this Court to infer that the elements of the claim could be satisfied. This includes the need to make sufficient factual allegations regarding tender for a quiet title claim, and the elements of fraud. Plaintiff must also clearly state which laws he claims have been violated, and why he thinks there has been a violation.

**IT IS SO ORDERED.**

Date: January 16, 2014

HON. ROGER T. BENITEZ
United States District Judge